52 CCPA

**Application of Roger A. PERKINS and Max L. Pochon.**

**Patent Appeal No. 7401.**

United States Court of Customs and Patent Appeals.

June 24, 1965.

---

Frederick J. McCarthy, Jr., Robert H. Dunlap, New York City, Paul A. Rose, Washington, D. C., for appellants.

Clarence W. Moore, Washington, D. C. (Raymond E. Martin, Washington, D. C., of counsel), for the Commissioner of Patents.

Before WORLEY, Chief Judge, and RICH, MARTIN, SMITH, and ALMOND, Judges.

ALMOND, Judge.

This is an appeal from the board's decision affirming the rejection of all claims in appellants' application.[1] The invention relates to an alloy containing tantalum and titanium. Addition of titanium to tantalum produces improvements in the tantalum properties. Claims 1, 9 and 11 are illustrative:

1. A novel composition of matter characterized by excellent malleability, ductility and low work hardening, and also having resistance to oxidation and corrosion consisting essentially of between 90 and 70 per cent by weight of tantalum and between 10 and 30 per cent by weight of titanium.

9. An article of manufacture in the form of sheet, plate, foil, wire and the like consisting essentially of between about 90 and 70 weight per cent tantalum and between about 10 and 30 weight per cent of titanium, said article being characterized by having a hardness only slightly greater than that of unworked material of the same composition and being further characterized by having excellent malleability, ductility, corrosion resistance and oxidation resistance.

11. As an article of manufacture, a metal surface in contact with highly reactive material, said surface consisting essentially of between about 96 and 85 weight per cent of tantalum and between about 4 and 15 weight per cent of titanium, said surface being resistant to both corrosive and oxidizing media.

The prior art relied upon is:

Summers-Smith, 81 Journal of The Institute of Metals 73–76 (1952–1953)

Maykuth, 5 Journal of Metals 234–235 (1953)

Both references describe the preparation of alloys having compositions falling within the claimed range. Small alloy castings were made and their microstructures determined. There is no indication that the alloy samples were further treated or that their properties were determined. The examiner stated the rejection as follows:

Claims 1–3 and 9–11 stand rejected as unpatentable over either Summers-Smith or May Kuth et al. as each relate to Ta-Ti alloys falling within the ranges claimed in the instant case. No patentable distinctions are noted in the claimed alloys over those disclosed by the prior art. Such vague recitations as excellent malleability, ductility and low work hardening are not deemed sufficient to distinguish the alloys. The attempted structural limitations are believed to be so vague as to be of no value in defining over the mere

---

1. Serial No. 848,900, filed October 27, 1959, for "Tantalum-Base Alloys."

composition. What is the structural form of "the like"?

The statutory basis of the rejection is not readily clear from that statement. The board was somewhat more precise in phrasing the rejection, stating:

> * * * the properties recited in the instant claims concerning malleability, ductility, low work hardening, and oxidation and corrosion resistance, are too broad and general to distinguish the alloys. Appellants do not deny that the alloys of the references possess the same broadly recited properties.

The entire context of the rejections when considered along with the appellants' arguments in the Patent Office convinces us that both 35 U.S.C. §§ 102 and 103 were in issue and are before us now.

We are of the opinion that claims 1, 2 and 3 drawn to the alloy as a composition of matter were properly rejected under 35 U.S.C. § 102. While appellants do not deny that the prior art discloses compositions falling within the claimed range, they rely upon other recitations in the claims. Appellants argue that by setting forth the ranges, between 10 and 30 per cent by weight of titanium (claim 1) and between 4 and 15 per cent by weight of titanium (claim 2), they distinguish over the art. When the claim is directed to a composition and the prior art falls within the range, we do not feel that the arguments directed to the range can have any bearing upon a "102 rejection."

Appellants also argue that the recited properties, excellent malleability, ductility, low work hardening, resistance to oxidation and corrosion, high strength and hardness, distinguish the claims. The examiner was not much impressed by the recitation. He stated:

> Such characterizations are not very specific. The excellence is compared to what, glass? What is high strength? Lead is hard when compared with chewing gum. * * *

If it is clear from the record that "as cast" alloys do not have the recited properties, the 102 rejection could not stand. Appellant alleged at oral argument that the claimed compositions differed from those of the prior art because they had been worked. Claims 1, 2 and 3 do not require that the composition be worked. The record is not clear that the as cast alloys do not have the recited properties. Typical statements in the specification are:

> The workability of the alloys was determined by cold-rolling alloy specimens 0.22 inch thick until signs of cracking occurred or until a sheet of 0.010-inch thickness was obtained. Table I illustrated the excellent workability of tantalum-titanium alloys containing 10 to 30 per cent titanium when cold-rolled. All samples were capable of reductions better than 95 per cent in thickness, and the workability was comparable to that of pure tantalum. The workability of the alloy has been found to drop off very rapidly when the titanium content exceeds 30 per cent.
> * * *

> As further indicated * * *, the total increase in hardness on cold-working tantalum-titanium alloys is very low, and the amount of work-hardening is a function of the titanium content. * * *

> The hardness and strength of cold-worked sheet are reported * * *. Both properties are shown to be a function of titanium content. * * *

> Experiments also reflected the effect of titanium additions to tantalum on elastic properties. Results of tests to determine the maximum elastic strain and elastic modulus of tantalum-titanium alloys appear * * *. Although the elastic modulus decreases in an almost linear fashion with increased titanium content, it will be seen that titanium additions significantly increase the maximum elastic strain. A 30 per cent titanium alloy, for instance, exhibits almost four times as great a maximum elastic strain as pure tantalum. * * *

> * * * * * *

> The resistance of several alloys to corrosion in different acids also was de-

termined, and results \* \* \* summarized \* \* \*. It will be seen that the addition of up to 40 per cent titanium had no measurable effect on resistance to boiling 65 per cent nitric acid and little or no effect on resistance to boiling 20 per cent hydrochloric acid. Corrosion behavior in these acids is comparable to that of pure tantalum and far superior to that of pure titanium. Resistance to boiling 55 per cent sulfuric acid was reduced slightly by titanium additions; however, all the alloys may be considered to possess excellent resistance to this medium. The corrosion behavior in most cases is comparable to that of pure tantalum.

■ We find nothing in appellants' arguments or the record to convince us that appellants' alloys differ from those actually prepared by Summers-Smith or Maykuth. Indeed, it would seem that the properties, as recited in the claims, could be properties of an unworked alloy. Thus on the record we find no differences between the claimed composition and the prior art. The rejection of claims 1, 2 and 3 under 35 U.S.C. § 102 is *affirmed*.

■ Article claims 9, 10 and 11 are not anticipated by the references. Although "sheet, foil, wire and the like" are not particularly specific in their description of the articles, it cannot fairly be said that the references disclose such articles. Although the examiner stated that:

> With respect to the alleged article claims, no distinctions over the composition have been presented. An article of manufacture in the form of sheet, plate, foil, wire and the like is about as specific as saying an article of manufacture of any shape or size. Webster's New Collegiate Dictionary, 2nd Edition, defines "plate" as "metal in sheets, whether beaten, rolled, or cast." We thus end up with an article of some indefinite shape produced by one of at least three methods. \* \* \*

the board took a somewhat different approach, stating:

The Examiner has pointed out, and we agree, that the claims do not exclude the cast alloys of the references. Furthermore, we take judicial notice that for many years tantalum has been worked into sheet and wire form and used for its corrosion resistant properties in the chemical industry. Since tantalum and titanium form a solid solution alloy, it would not be unexpected that a tantalum base alloy with titanium could be worked into sheet, plate and wire form and would be resistant to corrosion.

Appellants have not challenged the judicial notice taken by the board, and we thus accept that finding. Appellants do argue, however, that the board was in error in ignoring the work hardening properties of the articles of claims 9 and 10. Appellants rely especially on In re Tanczyn, 202 F.2d 785, 40 CCPA 886, and Rem-Cru Titanium, Inc. v. Watson, 147 F.Supp. 915 (D.D.C.1957). In both cases claims to an alloy composition were allowed despite the fact that the prior art disclosed alloy compositions falling within the claimed ranges. The holding in those cases was based upon improved properties discovered by the applicant *and specifically recited in the claims*. We agree with the board that sheets and wires of the tantalum-titanium alloy of the references are obvious within the meaning of 35 U.S.C. § 103. Since the properties of the claimed articles are recited in the claims only in general terms, this case does not fall within the Tanczyn factual pattern. Compare In re Bird, 344 F.2d 979, 52 CCPA ——.

As to claim 11, we agree with the board that the claim "although directed to an article of manufacture, appears to involve the use of the alloy as a corrosion resistant surface. \* \* \* [W]e are unable to perceive [un]obviousness in so using the alloy."

We thus affirm the decision of the Board of Appeals.

Affirmed.